## United States Bankruptcy Court

**Northern District of Alabama, Eastern Division**

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| KENNETH MANUEL GRAY, | } | CASE NO.    04-42900-JSS-7 |
| | } | |
| Debtor | } | CHAPTER   7 |
| | ---------- | |
| TANYA GRAY & LYDIA GRAY, | } | |
| | } | |
| Plaintiffs | } | |
| v. | } | A.P. NO.     04-40444-JSS |
| | } | |
| KENNETH MANUEL GRAY, | } | |
| | } | |
| Defendant | } | |

### MEMORANDUM OPINION

This Adversary Proceeding comes before the Court on the Motion for Summary Judgment filed by Plaintiffs for a determination of dischargeability of a debt for willful and malicious injury by the Debtor under 11 U.S.C. § 523(a)(6). In support of the Motion for Summary Judgment, the Plaintiffs rely on the transcripts, depositions, and exhibits from the state court civil proceeding in which both Plaintiffs received money judgments against Defendant, and the criminal guilty plea of Defendant in a state criminal proceeding. Both the civil and criminal proceedings stem from acts of sexual abuse by the Defendant upon his daughter, Plaintiff Lydia Gray.

Plaintiffs rely primarily on the preclusive effect of the state civil court judgment and the criminal guilty plea of the Defendant in a state criminal proceeding. This Court took the matter under advisement and now renders its findings of fact and conclusions of law as set forth in this Memorandum Opinion in accordance with Fed. R. Bankr. P. 7056, *applying* Fed. R. Civ. P. 56.

## JURISDICTION

Plaintiffs seek a determination in this adversary proceeding of the dischargeability of a debt resulting from an allegedly willful and malicious act or acts of the Defendant Debtor. Pursuant to 28 U.S.C. §§ 157(a), 1334(a), 1334(e), and the Standing Order of Reference in the Northern District of Alabama (Ord. Ref. (N. D. Ala. July 17, 1984)), this Court has original and exclusive jurisdiction to hear and determine all cases under Title 11. This Adversary Proceeding is brought under 11 U.S.C. §§ 523(a)(6), 523(c) and Fed. R. Bankr. P. 7056, and the order of reference in this case has not been withdrawn; thereby, in accordance with 28 U.S.C. § 157(b)(1), this Court possesses original and exclusive jurisdiction to determine the dischargeability of this debt. In accordance with 28 U.S.C. § 157(b)(2)(I) this Adversary Proceeding constitutes a core proceeding in which this Court is empowered to enter appropriate orders and judgments. Venue of this Adversary Proceeding is proper and has not been challenged. *See* 28 U.S.C. § 1409(a). Thereby, this Court concludes that subject matter, in personam, and in rem jurisdiction are proper in this tribunal.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056(c), applying Fed.R.Civ.R. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact. *See Celotex,* 477 U.S. at 323.

Case 04-40444-JSS    Doc 32    Filed 03/23/05    Entered 03/23/05 10:18:28    Desc Main
Document      Page 2 of 22

## FACTUAL BACKGROUND

During the marriage of Defendant and former spouse Tanya Gray, Defendant fondled his then nine-year-old daughter, Lydia Gray, on numerous occasions, in the family's living room under a blanket, while other members of the family were present, including mother Tanya Gray. Lydia Gray later informed her mother Tanya Gray of the abuse. When confronted by the Dekalb County, Alabama, Department of Human Resources, Defendant readily admitted that the acts of sexual abuse had occurred, a position that Defendant did not change throughout the criminal and civil proceedings.[1]

On June 18, 1993, Defendant was indicted for Sexual Abuse in the First Degree upon his daughter Lydia Gray (hereinafter, the "criminal case"). On July 1, 1994, Defendant pled guilty to the offense of Assault in the Second Degree, upon the indictment being orally amended by agreement. Defendant was sentenced to three years incarceration. Defendant applied for, and was granted, probation.

On March 31, 1999, Tanya Gray, individually, sued Defendant for intentional infliction of emotional distress, and Tanya Gray, as next friend of Lydia Gray, sued Defendant for assault and battery and for intentional infliction of emotional distress in the Circuit Court of Dekalb County, Alabama, Case No. CV-99-115 (hereinafter, the "civil case"). A jury found in favor of Plaintiffs on the one count brought by Tanya Gray and on both counts brought on behalf of Lydia Gray. Plaintiffs were each awarded money judgments against Defendant, and the money judgments give rise to Plaintiffs' claims in Defendant's bankruptcy case. Lydia Gray has a judgment in the amount of

---

[1] The only inconsistency in the record is as to the number of times that the abuse occurred. The number ranges from "a time or two" to "seventeen or eighteen" times.

Case 04-40444-JSS    Doc 32    Filed 03/23/05    Entered 03/23/05 10:18:28    Desc Main
Document    Page 3 of 22

$40,000.00 against the Defendant, with $20,000 of the judgment being compensatory and $20,000 being punitive. Tanya Gray has a judgment in the amount of $10,000.00 against the Defendant, with $5,000 being compensatory and $5,000 being punitive. The Judgment was entered on September 5, 2000.

Defendant filed for Chapter 7 relief in this Court on August 27, 2004. Plaintiffs filed this adversary proceeding against Defendant on October 8, 2004, seeking to have the debts owed to them declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

On February 15, 2005 Plaintiffs filed this Motion for Summary Judgment and a Memorandum of Law in support thereof. Plaintiffs have provided the Court with a thorough record to support their Motion. The Motion seeks summary judgment based on: the pleadings in this adversary proceeding, the statement given by Kenneth Manuel Gray to the Dekalb County, Alabama, Department of Human Resources on April 12, 1993 (Exhibit A), a certified copy of the June 18, 1993, criminal Indictment against Defendant (Exhibit B), a certified copy of the case action summary of the case against Defendant pursuant to the June 18, 1993 Indictment (Exhibit C), a certified copy of the Civil Complaint against the Defendant in the Circuit Court of Dekalb County, Alabama, Case No. CV-99-115 (Exhibit D), the Deposition of Defendant taken in the civil case (Exhibit E), a certified copy of the testimony of Defendant given in the civil case (Exhibit F), a certified copy of the testimony of Tanya Gray in the civil case (Exhibit G), a certified copy of the trial testimony of Lydia Gray in the civil case (Exhibit H), a certified copy of the jury charge in the civil case (Exhibit I), a certified copy of the Judgment entered in the civil case on September 5, 2000 (Exhibit J), the admissions of Defendant in this adversary proceeding (Exhibit K), a copy of the 1993 text of the

-4-

Alabama Code § 13A-6-21, Assault in the Second Degree, the offense to which Defendant plead guilty (Exhibit L).

## DISCUSSION AND ANALYSIS

Although Plaintiffs argue that the judgment entered in the civil case and the conviction upon the Defendant's entry of a guilty plea in the criminal case are sufficient to provide issue preclusion on all issues in this adversary proceeding, they also provide the Court with the record of the civil case, which provides facts necessary for the entry of judgment in favor of Plaintiffs.

The preclusive effect of the disposition of both cases will be discussed to determine whether they are dispositive as to the nondischargeability of the money judgments under 11 U.S.C. § 523(a)(6). The Court will then consider whether the substantial information in the record meets the standard for granting summary judgment where collateral estoppel is not dispositive.

### I. Requirements of a Claim Under 11 U.S.C. §§ 523(a)(6).

Section 523(a)(6) of the Bankruptcy Code provides:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt - -

. . .

(6) for willful and malicious injury by the debtor to another entity or the property of another entity.

11 U.S.C. § 523(a)(6).

In a case in which this Court faced substantially similar legal issues, this Court in, *In re Jenkins,* set forth a four factor test for the determination of nondischargeability under Section

-5-

523(a)(6) of the Bankruptcy Code.[2] *See In re Jenkins*, 258 B.R. 251 (Bankr. N. D. Ala 2001). This Court stated as follows:

> To be successful in establishing that a particular debt qualifies for the exception to a discharge for a debt that accrues as a result of a "willful and malicious injury by the debtor," under 11 U.S.C. § 523(a)(6), the creditor as plaintiff must prove, by a preponderance of the evidence, that:
>
> > (1)    the Debtor committed a wrongful and intentional act;
> >
> > (2)    the act necessarily (proximately) caused the injury to the creditor;
> >
> > (3)    the Debtor acted with the specific intent to cause injury; and
> >
> > (4)    the act of the Debtor was without just cause or excuse.

*In re Jenkins*, 258 B.R. at 257 *(citing See Kawaauhau v. Geiger*, 523 U.S. 57 (1998)(clarifying that there is a specific intent requirement); *Grogan v. Garner*, 498 U.S. 279 (1991)(clarifying that the standard of proof in dischargeability complaints is the preponderance of the evidence standard and not clear and convincing); *see also, Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934); *McIntyre v. Kavanaugh*, 242 U.S. 138 (1916); *Tinker v. Colwell*, 193 U.S. 473, (1904)(*quoting Bromage v. Prosser*, 4 Barn. & Cress. 247, 107 Eng. Rep. 1051 (K.B. 1825)(defining malice)).; *Hoskins v. Yanks (In re Yanks)*, 931 F.2d 42 (11th Cir. 1991); *Lee v. Ikner (In re Ikner)*, 883 F.2d 986 (11th Cir. 1989); *Sunco Sales, Inc. v. Latch (In re Latch)*, 820 F.2d 1163 (11th Cir. 1987); *American Cast Iron Pipe Co. v. Wrenn (In re Wrenn)*, 791 F.2d 1542 (11th Cir. 1986)).

---

[2] Unless otherwise noted in this opinion, any reference to a Section 523(a)(6) refers to that section of the Bankruptcy Code, Title 11 of the United States Code.

Case 04-40444-JSS    Doc 32    Filed 03/23/05    Entered 03/23/05 10:18:28    Desc Main
Document    Page 6 of 22

Of particular importance is the requisite intent of the Defendant. The United States Supreme Court in *Kawaauhau v. Geiger* applied a strict interpretation of the "willful and intentional" language in Section 523(a)(6) and held that the Defendant must actually intend the harm to the creditor for the damage resulting therefrom to be excepted to discharge under Section 523(a)(6). *Geiger*, 523 U.S. at 59. In adopting this narrow reading, the Supreme Court analyzed the statutory language as follows:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."

*Geiger*, 523 U.S. at 61-62 (quoted in *In re Jenkins*, 258 B.R. at 266).

## II. Collateral Estoppel

Collateral estoppel, also known as issue preclusion, precludes the re-litigation of identical issues between parties in different causes of action. "Issue preclusion relies upon the findings of fact actually litigated in one lawsuit, and the effect of those findings upon subsequent litigation which involves a different cause of action but arising out of the same or virtually same nexus of operative facts." *In re Jenkins*, 258 B.R. at 266 (*citing Brown v. Felsen*, 442 U.S. 127, 99 S. Ct. 2205 (1979)).

-7-

Under the doctrine of collateral estoppel, the bankruptcy court is not required to redetermine all of the underlying facts of a state court judgment. *See In re Jenkins*, 258 B.R. at 266.

The United States Supreme Court has expressly clarified the applicability of issue preclusion in bankruptcy court proceedings to determine the dischargeability of a debt. *See Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991) ("collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)"). As this Court noted in *In re Jenkins*, the Court's inquiry into the preclusive effect of state court judgments is guided by the full faith and credit statute. *In re Jenkins*, 258 B.R. at 264; citing 28 U.S.C. § 1738 ("judicial proceedings of any court of any ... state shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken"); *see also Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). The civil case judgment and criminal case conviction were entered by courts of competent jurisdiction in the State of Alabama. Accordingly, this Court must apply Alabama law in determining the preclusive effect of the prior judgments. *See Matsushita Elect. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir. 1995); *Precision Air Parts, Inc. v. AVCO Corp.*, 736 F.2d 1499 (11th Cir. 1984); *In re Jenkins*, 258 B.R. at 264.

For collateral estoppel to apply under Alabama law, "(1) [the] issue [must be] identical to one involved in previous suit; (2) [the] issue [was] actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment." *Wheeler v. First Ala. Bank of Birmingham*, 364 So. 2d 1190, 1199 (Ala 1978) (*quoted in Leverette, By and Through Gilmore v. Leverette*, 479 So.

-8-

2d 1229, 1235-36 (Ala. 1985).[3] "If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit." *Wheeler*, 364 So. 2d at 1199. The Plaintiffs bear the burden of proving by a preponderance of the evidence that all of the elements of the doctrine of collateral estoppel are present for its application. *See Grogan v. Garner*, 498 U.S. 279 (1991). "In order to meet this burden, the Plaintiff must produce a sufficient record to reveal the controlling facts and ferret out the exact issues actually litigated in the prior action." *In re Jenkins*, 258 B.R. at 264. Any reasonable doubt as to the preclusive effect of the state court judgments must be resolved against the party seeking issue preclusion. *See Zohlman v. Zoldan*, 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998).

### A. The Preclusive Effect of the Civil Judgments in Favor of Plaintiffs

In the civil case, the Plaintiffs brought two claims against Defendant: one for the tort of outrage (also known as intentional infliction of severe emotional distress by outrageous conduct) brought by and on behalf of both Plaintiffs and one claim for assault and battery on behalf of Plaintiff Lydia Gray only.

Plaintiffs' claims were fully litigated and a jury verdict was returned in favor of both Plaintiffs. For each claim, for collateral estoppel to apply, the record of the civil action must show that: a) the Defendant committed a wrongful and intentional act; b) the act necessarily (proximately) caused the injury to the creditor; c) the Defendant acted with the specific intent to cause injury; and

---

[3] This Court noted in *In re Jenkins* noted that there is no "cognizable difference" between the Alabama standard and the "generally accepted" standard." *In re Jenkins*, 258 B.R. at 264. The generally accepted standard is: "(1) the issue sought to be precluded must be the same as that involved in the requirements or action; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the final judgment." *In re Jenkins*, 258 B.R. at 264.

-9-

d) the act of the Defendant was without just cause or excuse. *In re Jenkins*, 258 B.R. at 257. Further, 1) each of these issues must be identical to the issue in the prior action 2) the issues must have been actually litigated in prior action; and 3) the resolution of the issue must have been necessary to the prior judgment. *Wheeler,* 364 So. 2d at 1199.

> a. Whether the Jury's verdict in favor of Plaintiffs on the tort of "outrage" constitutes issue preclusion of the nondischargeability of the Plaintiffs' debts under Section 523(a)(6)

The charge to the jury in the civil case is an excellent indicator of the specific issues that were actually litigated and determined, and what determination was necessary for the judgment. The Judge's charge to the jury for the tort of outrage or intentional infliction of severe emotional distress by outrageous conduct, was as follows:

> I want to talk to you a little bit about what we call the tort of outrage first. Now, the plaintiffs contend that the defendant has committed the tort of intentional infliction of severe emotional distress by outrageous conduct. This is referred to as the tort of outrage. In order for the plaintiffs to recover on their claim of the tort of outrage, the plaintiffs must reasonably satisfy you by the evidence of the following: Number one, that the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct. Number two, that the conduct was extreme or outrageous. Number three, that the actions of the defendant were the cause of the plaintiffs' distress. And number four, that the emotional distress suffered by the plaintiffs was severe.  With respect to the term extreme and the term severe, I charge you that the emotional distress required for recovery for the tort of outrage must be so severe that no reasonable person could be expected to endure it. . . .  Extreme conduct is that conduct which is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency

-10-

and to be regarded as atrocity and utterly intolerable in a civilized society. . . .  In addition to proving to your satisfaction by the evidence that the defendant has committed the tort of outrage as I have explained it to you, the plaintiffs must also prove to your reasonable satisfaction by the evidence that such conduct directly caused or proximately caused some injury or damage to them. . . .  Proximate cause, simply put, is the direct cause of something.  But the legal definition of proximate cause is this.  The proximate cause of an injury is that cause which in the natural and probable sequence of events and without the intervention of any new or independent causes produces the injury and without which such injury would not have occurred. . . .

On this charge, the jury returned a verdict and judgment in favor of both Plaintiffs and against the Defendant.  Of the four elements of the Section 526(a)(6) claim: 1) wrongful and intentional act, 2) proximate cause, 3) act with specific intent to cause injury, and, 4) no just cause or excuse, the Judge's charge to the jury addresses the first two elements very clearly.  In order for the jury to return a verdict in favor of the Plaintiffs, the jury must have found that Defendant committed a "wrongful" act, by their finding that the Defendant's action was "regarded as atrocity and utterly intolerable in a civilized society."  The jury must have implicitly found that the act itself was intentional because of the malice or recklessness required before the act is committed, i.e. that Defendant "intended to inflict emotional distress or the he knew or should have known that emotional distress was the likely result of his conduct."  The tort of outrage does not explicitly require "no just cause or excuse," but one can infer that the jury must have found that there was no just cause or excuse, or the behavior of the Defendant would not be properly "regarded as atrocity and utterly intolerable in a civilized society."  To the extent, if any, that the judgment does not preclude the "no just cause or excuse"

-11-

issue, this Court finds that there was and is no just cause or excuse for sexually abusing one's nine year old daughter.[4]

Where the finding of the jury fails for purposes of collateral estoppel in Plaintiffs' Section 523(a)(6) claim is on the willfulness of the injury. Recalling that the Defendant must have specific intent to injure, a finding that the Defendant "intended to inflict emotional distress," would certainly meet the standard. However, the jury could have found liability if the Defendant "knew or should have known that emotional distress was the likely result of his conduct."

The second, alternative, part of the jury charge is similar to wantonness under Alabama state law. Wantonness has been defined by the Supreme Court of Alabama as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *McKenzie v. George Killian III*, 887, So. 2d 861 (Ala. 2004) (*citing Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)). "To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *McKenzie*, 887, So. 2d at 871 (Ala. 2004) (*citing Bozeman*, 646 So. 2d 601). The Eleventh Circuit specifically decided in *In re Ikner*, that wantonness under Alabama law, which includes reckless acts, does not meet the "willful and malicious" requirement of Section 523(a)(6), and that the bankruptcy court is not bound by collateral estoppel on a finding of wantonness. *In re Ikner*, 883 F.2d 986 (11th Cir. 1989). A finding under the alternate part of the jury charge falls short of meeting the requirement of specific intent to injure.

_____

[4] *See also Petty v. Balanger*, 232 B.R. 543 (D. Mass 1999) (stating that the defendant's "sexual assault and battery [on a child] falls squarely within the exception contained in § 523(a)(6)").

Case 04-40444-JSS    Doc 32    Filed 03/23/05    Entered 03/23/05 10:18:28    Desc Main
Document      Page 12 of 22

The jury could have very well determined that Defendant acted with specific intent to injure both his wife and his daughter when he fondled his daughter in the family home, but that determination would not have been "necessary for the prior judgment," and there is no indication in that record that the jury made such a finding. *Wheeler*, 364 So. 2d at 1199. The jury's verdict establishes three of the four elements necessary to prove the Plaintiffs' claim, but because the jury charge includes the ability to find liability upon a reckless or wanton act, the finding does not preclude the issue that the Defendant act with specific intent to cause injury to either Plaintiff.

> b. Whether the Jury's Verdict in favor of Plaintiff Lydia Gray on the tort of assault and battery constitute issue preclusion of the nondischargeability of the Plaintiffs' debts under Section 523(a)(6)

As with the tort of outrage, the Judge's charge to the jury is illustrative of the issues decided in the civil case. On the claim of assault and battery, the Judge charged the jury:

> Now, in addition to this claim of outrageous conduct, I told you that Lydia makes her own claim or a separate claim for assault and battery. An assault and battery is any touching by one person of the person or clothes of another person in rudeness or in anger or in a hostile manner, that's an assault and battery. But intent to injure is not an essential element of assault and battery. . . . Now in addition to proving that the defendant has committed an assault and battery as I have defined that to you, in order for Lydia to recover from Mr. Gray on the claim of assault and battery, she must also prove to your satisfaction that such conduct, that is such assault and battery, if you find such to have occurred to your reasonable satisfaction by the evidence, proximately caused the injury that she complained of.

-13-

It is clear from the charge to the jury that intent to injure is not an essential element of the tort of assault and battery. The Judge specifically instructed the jury as such and intent to injure is required for Section 523(a)(6). *See Geiger*, 523 U.S. 57. As with the tort of outrage, the finding on the tort of assault and battery leaves open the issue of whether the Defendant acted with specific intent to cause injury.[5]

**B. The Preclusive effect of the Defendant's Criminal Guilty Plea**

The Plaintiffs cannot establish issue preclusion on every issue needed to prove a Section 523(a)(6) claim based on the civil case judgments, from which their claim in this case arises. In addition to the civil case, however, the Court has before it the record from the criminal case in which the Defendant pled guilty to Assault in the Second Degree against Lydia Gray. The acts alleged in the civil complaint are the same acts for which Defendant was indicted and later pled guilty to a lesser or different charge. Because the act or series of acts which Defendant admits to committing in the civil case and the criminal case are the same act or series of acts, the Court may look to the record in the criminal case to determine whether Plaintiff Lydia Gray has established her Section 523(a)(6) claim through collateral estoppel.

---

[5] As a side note, the Judgment does not break the damages down between torts outrage and assault and battery for Lydia Gray. If one tort was found to establish issue preclusion and one was not, the Court would have no way of knowing what part of the damages are from assault and battery and what part is for outrage.

-14-

a. Whether a conviction upon a guilty plea, as opposed to a conviction upon a trial on the merits, is sufficient to establish collateral estoppel.

After Defendant was indicted the crime of Sexual Abuse in the First Degree, he pled guilty to the lesser crime of Assault in the Second Degree. For collateral estoppel to apply, the issues have must have been "actually litigated." *Wheeler*, 364 So. 2d at 1199. One could construe by the lack of a full trial that a plea of guilty to a criminal charge falls short of the "actually litigated" requirement for collateral estoppel to apply. The Fifth Circuit Court of Appeals and the Eleventh Circuit Court of Appeals have held to the contrary. In *Brazzell v. Adams*, the Fifth Circuit stated that, "[t]he general rule is that collateral estoppel applies equally whether the prior criminal adjudication was based on a jury verdict or a guilty plea" *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir. 1974).[6] More recently, the Eleventh Circuit, in *Blohm v. Commissioner of Internal Revenue*, stated that "for purposes of applying the doctrine of collateral estoppel, there is no difference between a judgment of conviction upon a guilty plea and a judgment rendered after a trial on the merits." 994 F.2d 1542, 1554 (11th Cir. 1993).

Under Alabama law, Defendant is equally precluded from contesting the facts upon which his guilty plea is based. *See Ex parte Howard*, 710 So. 2d 460, 465 (Ala. 1997) (*quoting Russell v. State*, 428 So.2d 131 (Ala. 1982) ("when a guilty plea is accepted and entered by the court, it is a conviction of the highest order, and is an admission, of record, of the truth of whatever is sufficiently charged in the indictment... A guilty plea is an admission of all the elements of the offense charged.")

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted all of the decisions of the former Firth Circuit decided before October 1, 1981, as precedent.

-15-

(internal citations omitted)); *See also Durham v. Farabee*, 481 So. 2d 885, 886 (Ala. 1985) (stating that "a person's conviction in a criminal case is admissible against him in a civil action to show that he did the act for which he was convicted" (citing *Yancey v. Farmer*, 472 So. 2d 990 (Ala. 1985)); *Fidelity-Phenix Fire Ins. Co. of New York v. Murphy*, 146 So. 387, 392 (Ala. 1933) (stating that it is "agreed that, if the defendant interposed a plea of guilty, on which his conviction was predicated, the judgment of conviction in connection with such plea is admissible in a civil action, for it is then in the nature of an admission of the facts"). Accordingly, Defendant's conviction upon his plea of guilty carries the same weight for collateral estoppel purposes as would a conviction upon a full trial.

> b. Whether Defendant's plea to the crime of Assault in the Second Degree is sufficient to meet the "willful and malicious" requirement of Section 523(a)(6) with respect to Plaintiff Lydia Gray

Defendant pled guilty to Assault in the Second Degree. Under Code of Alabama Section 13A-6-21 provides in pertinent part:

(a) A person commits the crime of assault in the second degree if the person does any of the following:

(1) With intent to cause serious physical injury to another, he or she causes serious physical injury to another person.

(2) With intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon or dangerous instrument.

(3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or dangerous instrument

(4) With intent to prevent a peace officer, as defined in Section 36-21-60, or emergency medical personnel or a firefighter from performing a lawful duty,

-16-

he or she intends to cause serious physical injury and he or she causes serious physical injury to any person.

(5) With intent to cause serious physical injury to a teacher or to an employee of a public educational institution during or as a result of the performance of his or her duty, he or she causes serious physical injury to any person.

(6) For purposes other than lawful medical or therapeutic treatment, he or she intentionally causes a stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him or her, without his or her consent, a drug, substance or preparation capable of producing the intended harm.

Ala.Code.§ 13A-6-21(a) (1975).

As shown above, there are six categories of acts that fall within the crime of Assault in the Second Degree. There is no indication in the record of the criminal proceeding that indicates that the Defendant pled guilty to any particular subsection of Ala.Code.§ 13A-6-21. Because not all of the subsections require an intent to injure, as is required by Plaintiff's Section 523(a)(6) claim, it is necessary to determine which subsection or subsections could be applicable to the facts of this case.

Defendant's statements throughout the substantial record presented to the Court state that Defendant fondled Plaintiff Lydia Gray while the two were sitting in a chair, under a blanket, in the family's household. Defendant does not dispute that these acts occurred or how they occurred. The only dispute in the record is as to the exact number of times the fondling occurred, which the Court finds is not a material fact in this case.

Of the six subsections of the crime of assault in the second degree, only one could be applicable to the facts that gave rise to the criminal and criminal cases. That act is described in

subsection one of (a)(1) of Ala.Code.§ 13A-6-21 (1975) ("With intent to cause serious physical injury to another, he or she causes serious physical injury to another person").

The other subsections of Ala.Code.§ 13A-6-21 (1975) could not be applicable to these facts. Defendant did not use a deadly weapon or dangerous instrument, which eliminates Ala.Code. §§ 13A-6-21 (a)(2) and (a)(3), Plaintiff Lydia Gray was not a teacher or a peace officer, which eliminates Ala.Code. §§ 13A-6-21 (a)(4) and (a)(5). Plaintiffs and the State never suggested in the civil and criminal cases that Defendant used any sort of substance to intentionally cause a stupor in his daughter, which eliminates Ala.Code. § 13A-6-21 (a)(6).

Because a "guilty plea is an admission of all the elements of the offense charged," and Defendant's crime requires "intent to cause serious physical injury," Defendant is estopped from denying that he had specific intent to cause injury to his daughter, Lydia Gray. *Ex parte Howard*, 710 So. 2d at 465; Ala.Code. § 13A-6-21 (a)(1).

By proving through collateral estoppel that the Defendant acted with specific intent to cause injury to her, Plaintiff Lydia Gray has proven every element of her Sections 523(a)(6) action. Accordingly, Lydia Gray has shown that there is no genuine issue as to any material fact and that the she is entitled to judgment as a matter of law.

### III. Inferring Intent to Injure Tanya Gray from the Record

Defendant's specific intent to cause injury to his daughter is established by his guilty plea to Assault in the Second Degree, but the guilty plea sheds no light on whether the Defendant had specific intent to injure Tanya Gray, who was not the victim of the crime. Because the jury's charge in the civil case on the tort of outrage provided for Tanya Gray's recovery whether the Defendant's conduct was intentional or reckless, if Tanya Gray is entitled to summary judgment on her claim, the

-18-

Court must glean the facts necessary to determine Defendant's specific intent to injure her from the substantial and exhaustive record provided by Plaintiffs.

As this Court stated in *In re Jenkins*, "the plaintiff must delve into the realm of evidence generally reserved for criminal and quasi-criminal actions; that of the defendant's state of mind." *Jenkins*, 258 B.R. at 268. The requisite intent the Court must infer from the record is that the Defendant actually intended to harm his wife by the acts he did to his daughter. *See Geiger,* 523 U.S. 57.

An individual's intent to harm a person in addition to the victim of a crime is probably the exception rather than the rule. In the case of the sexual abuse of a child, the likelihood that the offender intended to injure the parent of the victim would bear some relation to the familiarity of the parent to the offender.

If the offender were to drive down a random street and pick up a random child in his car, sexually abuse the child, and drop the child off a block away, the chance that the offender had intent to injure the child's parent, who is unknown to him, is nearly impossible. That is not to say that the offense will not cause tremendous harm to the parent when the parent becomes aware of the crime, only that the offender may not have actually intended the harm to the parent. No reasonable person could expect the crime not to harm the parent, but the reasonable expectation of harm does not meet the requirement of Section 523(a)(6). *See Geiger,* 523 U.S. 57; *Jenkins*, 258 B.R. 251.

If the offender was the neighbor of the child and parent, there is a greater possibility that the offender intended harm to the parent through the acts upon the child. If the offender actually knows the parent and has any notion of the bond between a parent and child, there may be some basis for inferring intent on the part of the offender. If the offender were a trusted uncle of the child, the

-19-

probability that the uncle intended to harm his sibling in addition to the child is probably greater still. In other words, there is a sliding scale between the relationship of the offender and the parent that allows the inference of intent to harm the parent, in that the closer the relationship, the more likely it is that facts may exist to form a basis of a finding of an intent to injure the parent in addition the child.

The facts in the case at hand are at the very end of this sliding scale. The claimant Tanya Gray was the wife of the offender, as well as the victim's parent. Fortunately though, the Court is not faced with the task of drawing a line on the sliding scale upon which intent can be inferred or with the general question of whether an offender has actual intent to harm his or her spouse when the offender sexually abuses the couple's child, as the facts in each case will vary. The question before the Court is the more narrow question of whether this Defendant acted with specific intent to injure Tanya Gray when he sexually abused the couple's daughter, Lydia Gray. The Court determines the issue in the affirmative and concludes that there are sufficient facts to support a finding of specific intent to injure Tanya Gray on the part of the Defendant, an issue that is not in dispute.

The record shows, primarily through Defendant's admissions, that the abuse happened in the living room of the family's home. On every occasion, other members of the family were actually in the room with Defendant and Lydia Gray, including at least on some occasions, Plaintiff Tanya Gray. The Defendant states, as the reason he abused his daughter, that he was having marital problems with his wife, Tanya Gray. Defendant stated that Tanya Gray filed for divorce two or three times before the abuse occurred, but that Defendant talked her out of the divorce. Defendant partially blamed his wife for the abuse on his daughter at the time of the abuse, or at least believed

-20-

that she shares some of the responsibility for the abuse because of problems in the couple's marriage. Additionally, the Defendant was aware that Tanya Gray has been sexually abused as a child.[7] The Defendant acknowledged in his civil trial testimony that he, in some way, reflected on his wife's earlier molestation before he molested his own child.[8]

From the record presented, the Court finds and concludes that the evidence presented by the Plaintiff is sufficient to show the Defendant's specific intent to injure Tanya Gray. As stated above, Plaintiff Tanya Gray has established all of the requirements of her Section 523(a)(6) action, other than specific intent, through collateral estoppel.[9] Accordingly, with the Court's finding that the Defendant acted with specific intent to cause injury to Tanya Gray, she has proven every element of her Sections 523(a)(6) action. Tanya Gray has shown that there is no genuine issue as to any material fact and that the she is entitled to judgment as a matter of law.

Both Plaintiffs Tanya and Lydia Gray have meet their burdens of proof and of persuasion that they are entitled to summary judgment. The Court finds that debts arising from the judgments in

---

[7] The Court makes no finding that Tanya Gray either was or was not sexually molested as a child, as no finding is necessary to the outcome of this case. The relevant fact in determining an intent to injure, is that the Defendant believed that Tanya Gray was actually molested as a child.

[8] The questions and answer are not entirely clear as to the exact timing that the Defendant made this connection, but the Defendant acknowledged a connection. The question and answer from page 38 of Defendant's trial testimony is as follows:

Q    Did you have any reflections on how bad that had hurt her [Tanya Gray] during sitting in this rocker molesting your own child?

A    Yes, beforehand. At the time that I molested my daughter, I had no mental recollection of anything.

[9] As noted above to the extent, if any, that the Defendant's lack of just cause or excuse is not established by collateral estoppel, the Court finds, based on the record, that the Defendant was without just cause or excuse.

-21-

favor of Plaintiffs qualify for the exception to a discharge as a debt accruing as a result of a "willful and malicious injury by the debtor," under 11 U.S.C. § 523(a)(6). Accordingly, the claims by Plaintiffs against Debtor Defendant are nondischargeable. A separate Order shall be entered consistent with this Memorandum Opinion, pursuant to Fed. R. Bankr. P. 7056, *applying* Fed. R. Civ. P. 56.

Done this 22 March 2005.

JAMES SCOTT SLEDGE
United States Bankruptcy Judge

-22-